# Richmond

STROTHER DRUG COMPANY, INCORPORATED, V. D. L. TAYLOR, COMMISSIONER OF THE REVENUE.

April 7, 1933.

Present, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Thomas J. Williams*, for the petitioner.

*T. G. Hobbs,* for the respondent.

Epes, J., delivered the opinion of the court.

The original petition alleges the following facts, which are admitted by the answer of the defendant. Strother Drug Company, Incorporated, was in 1930, and is now, the owner in fee simple of a lot of land at the west corner of Jefferson and Twelfth streets in the city of Lynchburg. This lot is 165 x 132 feet, and has on it a building. In the general reassessment of real estate made in 1930, in the city of Lynchburg, Virginia, this lot with the improvements thereon was assessed at $71,500 (the lot at $18,500 and the improvements at $53,000).

In accordance with the provisions of chapter 411, Acts of 1930, page 874, amending section 344 of the Tax Code of Virginia, a local board of equalization was appointed in 1930. No application was made by Strother Drug Company to this board of equalization for any reduction in its assessment, nor was any change made in it by this board.

On June 22, 1932, in accordance with the provisions of section 344 of the Tax Code of Virginia, as amended by chapter 137, Acts of 1932, page 154, the Corporation Court of the city of Lynchburg appointed a local "board of equalization of real estate assessments," whose term of office began on July 1st, and expired October 31, 1932. Strother Drug Company, Incorporated, made application to this board for a reduction in its assessment to equalize it with the assessment of other real estate in the city. On August 17, 1932, this board entered its order decreasing the assessment of the above mentioned lot and its improvements to $55,000 (the value of the lot being placed at $13,500 and of the improvements at $41,500). A certified copy of this order was "promptly" transmitted by the board to D. L. Taylor, commissioner of the revenue for the city.

The petition asserts that by virtue of the provisions of section 346 of the Tax Code of Virginia, as amended by

chapter 411, Acts 1930, pages 875-876, it was the duty of the commissioner of the revenue, upon receipt of a certified copy of this order, to change the assessment of this property on the land book for 1932 to accord with the decrease in assessment made by the board of equalization in its order of August 17, 1932. The commissioner of the revenue did not make such change.

On December 27, 1932, the petitioner expressly requested (in writing) the commissioner to make such change; but the commissioner refused to do so on the ground that "the changes made by the local board of equalization during the year 1932, * * * do not become effective until the year 1933, and would first be made on the land book for that year."

The tax tickets on this real estate were made out based on the valuation thereof as shown in the general reassessment of 1930, and payment thereof was demanded of the petitioner. Whether the tax so extended against the petitioner on this real estate has been paid or not is not alleged in the petition and does not appear from the record.

The prayer of the original petition is this:

"Wherefore, your petitioner, being without any other adequate remedy, prays that a peremptory writ of mandamus may be awarded by this honorable court directing the said D. L. Taylor, commissioner of revenue of the city of Lynchburg to make upon his land book for the year 1932 the changes in the valuation of your petitioner's said real estate, for that year made by the said order of said board of equalization, so that your petitioner may have the benefit of said reduction in valuation, by way of exoneration of so much taxes as exceed the proper amount, if the taxes have not been paid by him, and, if the taxes have been paid, to a refund of so much thereof as are erroneous, as is provided for by said section 346."

Later Strother Drug Company filed a supplemental petition on behalf of itself and all others similarly situated. The supplemental petition alleges that the local board of

equalization appointed in 1932 made over 2,000 reductions in assessments of real estate in the city of Lynchburg; and that in each case D. L. Taylor, commissioner of the revenue, failed and refused to make a corresponding change of the assessments on the land book for 1932; and makes the following prayer:

"Wherefore your petitioner, on behalf of all the real estate owners and taxpayers of the said city of Lynchburg, as well as on his own behalf, they being without any other adequate remedy, prays that a peremptory writ of mandamus be awarded by this honorable court directing the said D. L. Taylor, commissioner of revenue of the city of Lynchburg, to make upon his land book for the year 1932 each and all changes in the valuation of real estate in said city for the year 1932, which were made by the orders of and transmitted to him by said board of equalization during its term commencing July 1, 1932, and ending October 31, 1932, so as to apply to and become effective for said year 1932."

D. L. Taylor, commissioner, has answered, admitting the allegations of the petition; but asserting that the mandamus prayed for should not issue for two reasons: (1) The changes made in real estate assessments by the board of equalization in 1932 did not become effective until 1933. (3) The petitioner has an adequate "remedy at law, by which it can go into the local court in the city of Lynchburg and receive relief from all erroneous assessments, if erroneous; or it can pay the taxes for the year 1932 and apply to the court for a refund of taxes wrongfully collected."

The record does not show whether or not the commissioner of the revenue had completed the making up of the land book for 1932 at the time the order of August 17, 1932, was entered by the local board of equalization; but the court will take judicial notice of the fact that it had been completed before the original petition was filed and before the petitioner, on December 27, 1932, wrote the commissioner requesting that he change its assessment on the 1932 land book to accord with the order of the board.

The determination of the principal question here presented requires an examination of the history of the statutes of Virginia relating to the equalization of real estate assessments by local boards of equalization; but it is not necessary to carry this examination further back than 1924.

By chapter 397, Acts 1924, page 574, local boards of equalization with power to equalize real estate assessments were provided for. This act (section 1) authorized the appointment of such a board "on or before the first day of June of the year of the quinquennial assessment of real estate" by the judge of the circuit or corporation court of each county or city. Subsections "a" and "e" of section 2 of this act read in part as follows:

"2. Powers and duties of local boards of equalization.—Each local board of equalization of assessments shall have power and it shall be its duty:

"(a) To equalize the assessments of real estate within the county or city, and for this purpose it shall review the land books as soon as they are completed by the land assessors, and make such changes therein as it may determine. The books shall be delivered to the local board of equalization by the county land assessors not later than the first day of July and by the city land assessors not later than the firt day of September; provided that the judge of the court in which the land assessor qualified, for cause shown shall have the right to extend the time for the delivery of such books for a period not exceeding thirty days. The said board shall complete its review and deliver the books to the commissioner of the revenue not later than the first day of February following, and the commissioner shall proceed to make his assessments, certify and deliver the books as required by law.

"(e) * * * And if the order, or orders, of the board provide for an increase of the assessed value of the property of any taxpayer, the commissioner of the revenue shall make a supplemental assessment for the increased value or values for the year following the quinquennial assessment,

and shall note the change on his land book to be carried into the land book of each succeeding year until the next quinquennial assessment; and if the order of the board provides for a decrease of the assessed value of the property of any taxpayer, he shall note such decrease on his land book to be carried into the land book of each succeeding year until the next quinquennial assessment, and upon presentation of the copy of the order furnished the taxpayer, the treasurer shall credit the assessment made against the property for the year following the quinquennial assessment, with the amount determined to be erroneous, and if the said taxes have been paid shall refund the taxpayer the amount erroneously paid."

It is clear that under the act of 1924 changes in assessments made by the local board of equalization became effective in the year in which the quinquennial assessments became effective, whether made in the year in which the general reassessment was made or in the year in which the reassessment became effective.

Chapter 397, Acts 1924, was repealed by chapter 147, Acts 1926, page 252, and a new provision for the appointment of local boards of equalization was thereby enacted. Section 7 of the act of 1926, provided for the appointment of a local board of equalization by the local court in any year, that is, whenever so petitioned in any year by the board of supervisors or ten taxpayers of the county, or the council of the city; and that "the members of each board of equalization shall serve until July first next following their appointment." Sections 8 and 9 read in part as follows:

"8. It shall be the duty of commissioner of the revenue of each locality having a local board of equalization annually to deliver to the chairman of the board of equalization the land and property books as soon as completed, and thereupon each local board of equalization shall sit for such length of time as may be necessary to discharge the duties imposed and to exercise the powers conferred by this act.

\* \* \* The board shall hear and give consideration to such complaints and equalize such assessments and shall moreover equalize the assessments whether specific complaints be laid before it or not. In the year of a general reassessment of real estate and in the year immediately following such assessment, each local board shall devote special attention to grievances and complaints with regard to the assessment of real estate and direct such corrections on the land books with reference thereto as may be determined; in all other years it shall make no changes in real estate assessments, save and except of lands, lots or improvements not previously assessed.

"(9) \* \* \* The board shall keep minutes of its meetings, and enter therein all orders made and transmit promptly copies of such orders as relate to the increase or decrease of assessments to the taxpayer, commissioner of the revenue, and attorney for the county, city or town. And if the order, or orders, of the board provide for an increase of the assessed value of the property of any taxpayer, the commissioner of the revenue shall make a supplemental assessment for the increased value or values and shall note the change on his books; and if the order of the board provides for a decrease of the assessed value of the property of any taxpayer, he shall note such decrease on his books."

This act already contemplated that corrections of assessments made by a local board of equalization "in the year of a general reassessment" should not become effective until the general reassessment became effective (*i. e.*, the year succeeding that in which the board made the correction), but that corrections made "in the year immediately following such assessment" should become effective in the same year in which the corrections were made.

By chapter 157, Acts 1926, page 284, a commission was appointed "to collate, revise, simplify and codify the general tax laws of this State;" and by chapter 45, Acts 1928, pp. 35-252, the General Assembly enacted "The Tax Code of Virginia." This act, at page 248, expressly repealed chap-

ter 147, Acts 1926, but re-enacted, without any material change in language, sections 7, 8, and 9 of the act of 1926 as sections 344, 345, and 346 of "The Tax Code of Virginia."

By chapter 411, Acts 1930, page 869, at pages 874-876, sections 344, 345, and 346 of the Tax Code were amended and re-enacted. As amended by the act of 1930, the material parts of these sections read as follows:

Section 344. (The designated court or judge thereof in vacation) "shall, in the year 1930 and every fourth year thereafter, and may in the year 1932 and every fourth year thereafter, create and appoint for such county or city a board of equalization of real estate assessments. * * * In every city containing less than fifty thousand inhabitants, according to the last preceding United States census, and in every county, the terms of the members of the board of equalization appointed in 1930 and every fourth year thereafter shall expire on December 31, 1930, and every fourth year thereafter; and in every other city, the terms of the members of the board of equalization appointed in 1930 and every fourth year thereafter shall expire on June 30, 1931, and every fourth year thereafter. In every county and city, the terms of the members of the board of equalization appointed in 1932 and every fourth year thereafter, shall begin on October 1, 1932, and every fourth year thereafter, and shall expire on October 31, 1932, and every fourth year thereafter. * * *."

Section 345. "* * * Of each sitting public notice shall be given at least ten days beforehand * * *. Such notice shall inform the public that the board shall sit * * * for the purpose of equalizing real estate assessments in such county or city and for the purpose of hearing all complaints of inequalities including errors in acreage in such real estate assessments. The board shall hear and give consideration to such complaints and equalize such assessments, and shall, moreover, be charged with the special duty of increasing as well as decreasing assessments, whether specific complaint he laid or not, if in its judgment, the same be neces-

sary to equalize and accomplish the end that the burden of taxation shall rest equally upon all citizens of such county or city. * * *."

Section 346. "* * * The board shall keep minutes of its meetings, and enter therein all orders made and transmit promptly copies of such orders as relate to the increase or decrease of assessments to the taxpayer and commissioner of the revenue. The commissioner of the revenue shall make on his land book the changes so ordered by the board, and if such changes affect the land book for the then current year, and such land book has been then completed, the commissioner of the revenue may for that year make a supplemental assessment in case of an increase in valuation; and in case of a decrease in valuation, the order of the board shall entitle the taxpayer to an exoneration from so much of the assessment as exceeds the proper amount, if the taxes have not been paid by him, and in case the taxes have been paid, to a refund of so much thereof as is erroneous."

By chapter 137, Acts 1932, section 344 of the Tax Code of Virginia was again amended, but no change was made in sections 345 and 346. As so amended, the material parts of section 344 now read:

Section 344. "* * * In every city the terms of the members of the board of equalization appointed in 1934 and every fourth year thereafter shall expire on June 30, 1935, and every fourth year thereafter. In every county, the terms of the members of the board of equalization appointed in 1934 and every fourth year thereafter shall expire on December 31, 1934, and every fourth year thereafter. In every county and city, the terms of the members of the board of equalization appointed in 1932 and every fourth year thereafter, shall begin on July 1, 1932, and every fourth year thereafter, and shall expire on October 31, 1932, and every fourth year thereafter."

The respondent contends that in the light of the history of the several acts from 1924 through 1932 relating to local boards of equalization, the statutes as they read

after the amendment of 1932 should be construed to provide that changes made by a local board of equalization, whether appointed in 1930 or in 1932, should become effective in the year succeeding that in which the board was appointed. But while respondent's argument is ingenious, we think that the intention of the legislature is plain that changes made by a local board of equalization appointed in 1932 should become effective in that year, that they did "affect the land book for the current year," and that such changes as were made and certified to the ccmmissioner of the revenue before he had completed the land book for that year should have been made thereon by him.

Had this petition been filed and the cause heard before the land books for 1932 had been completed, there would be much force in the contention of the petitioner that a mandamus should issue to compel the commissioner of revenue to comply with his ministerial duties to make on the land books for 1932 such changes in real estate assessments as had been ordered by the board. But at the time this petition was filed the land books for 1932 had been completed, the tax tickets for that year had been made out, and probably most of them had been collected. Under such circumstances to issue the mandamus prayed for would be to produce "confusion worse confounded." But in addition to this, to issue a mandamus in this cause is entirely unnecessary and improper under the circumstances, because section 346 provides an ample relief to the taxpayer who is affected by such changes, although no change has been made in the land book. This section expressly provides that "in case of a decrease in valuation, the order of the board shall entitle the taxpayer to an exoneration from so much of the assessment as exceeds the proper .amount, if the taxes have not been paid by him, and in case the taxes have been paid to a refund to so much thereof as is erroneous."

This language means that upon presentation of a copy of the order furnished the taxpayer the treasurer shall credit the assessment made against the property for the

year 1932 with the amount determined to be erroneous, and authorizes him, if the tax has not been paid, to accept payment of the tax computed on the corrected assessment, and if the tax has been paid, to refund to the taxpayer the amount erroneously paid.

For the reasons stated the mandamus will be refused.